Mr. Boyd, can you hear us? Good morning, Your Honour. Yes, I can hear you. Can you hear me? Yes, I can and we have counsel here in the courtroom. So we're ready to hear argument when you are ready to begin. Right, thank you. Good morning, Your Honours and may it please the court. Adam Boyd on behalf of the petitioner Jagjit Singh. The issue in this case is whether or not the harm Mr. Singh suffered was sufficiently severe to factual issue as to what happened. It's rather whether or not what happened to him was serious enough. I will note at the outset that the government raised the wrong standard of review in their brief, claiming that this court reviews these questions for substantial evidence, where the proper standard of review is actually de novo. On that point, I don't think I agree with you. We review de novo when we're talking about whether or not something constitutes persecution, whether it, you know, when we think about like the definition of persecution and we can talk about that case law if you want. But if we're just talking about whether, I don't mean to minimize when I say just, but if the question is whether something rises to the level of persecution, you know, quantitative analysis, if you will, we really routinely review that for substantial evidence, don't we? I think that the specific definition of persecution is a legal issue and whether or not the facts that have been established, the unambiguous facts that have been established, meet that definition is a legal question, not a factual one. So whether or not what somebody experienced rises to the level of persecution, I would contend is a legal conclusion rather than a factual one. If we were quibbling about what actually happened, to the respondent, then that would that would be a factual question. I would say that this court has has stated that on several occasions. First of all, I would point to Borg-Sedano, which is 418 Fed 3rd, 1082. That's exactly the case I would have pointed you to. That's where Judge Fletcher authored that for us, whether particular acts constitute persecution for asylum purposes. That's different than whether the whether contested facts rise to the level of persecution. I guess I'm reading them the same way. I would also say there's a big difference. There's a big difference. And this is important and I don't want to belabor the point, but I want to make sure that you both have a fair opportunity to respond. When we're talking about whether something constitutes persecution, first of all, those are real outlier cases and we do it on occasion and apply the de novo standard. But in Borg-Sedano, for example, I'm sure you've read the case. So, you know, but by way of illustration, that was a person who had been forced to perform oral sex on a police officer at multiple times, really horrendous facts, and the IJ in that case really unfortunately characterized that as and rebuked the petitioner for testifying that that was persecution as opposed to a sex game or something of that nature. And our court was very unambiguous in saying that's persecution. The nature of that is persecution. And the Carr case we talked about is attempted rape, really persecution. And we decided as we're talking about the nature of the harm, not the more run-of-the-mill, again, I don't mean to be dismissive, but the bulk of our case law in this area is whether something rises to the level of. And in those cases, I just want to hear your best argument. In those cases, we apply substantial evidence, don't we? That is correct. But I would say that this is not one of the quote-unquote run-of-the-mill cases. You know, we're talking about we're talking about an individual who was forcibly taken to a police station, beaten for 45 minutes, sought medical attention, and we're talking about a case where the police came and threatened to kill him. Okay, so let's talk about that. Let's talk about that, because I think on the other point, we're gonna agree to disagree today, at least for my vote, and I'm only one of three, so maybe you'll do better with my other colleagues on that point. But I don't see where, we have case law saying that a death threat rises to the level of, or it certainly can if it's deemed credible, and we don't have any engagement here, I think, by the Immigration Court on the death threat, do we? That is correct, Your Honor. They claim to review the entire, the totality of the persecutory acts, but it really seems like they ignore the fact that it was a prolonged engagement with both police and private actors, and that there were multiple death threats by both private actors and the police. Well, if we're talking about the beating, I think you may have run, you know, that might run into a problem, because I don't see anything in the record, and the IJ said as much, where the petitioner testified about the resulting harm. Right? I don't see anything, and I'm not talking about corroborating it. This isn't a matter of lack of corroboration. His testimony alone does not say that he was injured. It says he went to the hospital, but that seems problematic. Setting that aside, though, there's a death threat here. There is, and I agree with you that it would be problematic if we were arresting solely on the beatings as evidence of past persecution, but what this court has consistently held is that death threats combined with close confrontations, even if those close confrontations aren't adequately described by the record, are sufficiently serious to constitute past persecution. I think that there are multiple death threats in this case, both directly to the petitioner and to his family. Given the history of violence, whether it's described adequately or not on its own, and the death threats both at the time of the attacks and separately, that is sufficiently serious to constitute past persecution. When you talk about attacks, I think, excuse me for interrupting, but when you talk about attacks, it seems that you're trying to rope in the what I'm going to call the hockey stick attacks, and those were not perpetrated by the government, right? There's no allegation that they were perpetrated by the government, is there? It's kind of a fine distinction. It seems like they were perpetrated by people who were supporting the ruling party at the time in the local jurisdiction. And so whether or not they were governmental actors, I don't think there's evidence that they were specifically, you know, had held any sort of position, but they were acting on behalf of a political party. This court has said that when it's private actors who are acting on behalf of a political party and that they're obtaining impunity from the police, that that is sufficiently serious or that is a causal link between the government and the private actors. In this case, I would point to the fact that the petitioner tried to report the report to the police, the attacks that happened to him, and the police specifically told him to go away, that they would not take the report. Under those circumstances, you can find that it is at least condoned by governmental actors, even though these individuals seem like they were private individuals. What do we do about the fact that we don't have a credibility determination that the BIA endorsed? Not, I mean, a positive credibility determination. So the court can't affirm or cannot dismiss this petition based on a credibility finding, because, as you noted, the BIA explicitly refused to uphold that finding of the immigration judge. I don't think that it's supported by the record in this case. There's much made of the petitioner's demeanor, but I don't think that that would be ultimately supported. And if this court was concerned with credibility, it would need to demand that the Board of Immigration Appeals obtain that finding. I want to save a couple of minutes for your, forgive me, interrupting. I didn't mean to. Were you done? Yes, I was done. And yes, I would like to reserve the remaining time. OK, thank you. I apologize again for interrupting. We'll hear from government's counsel. Good morning, Your Honors. May it please the court. Rachel Berman-Voporis, United States Attorney General. The court should deny the petition for review. The petitioner cannot show that the evidence compels the conclusion that the harm he experienced rose to the level of persecution because we do not have enough evidence about the harms that he experienced. We don't know enough. This is an unusual case because there was certainly, under our case law, if he were credited, several beatings and attacks and several death threats. Is there any case in which that combination has been deemed to be not prosecution? I would look to Halim versus Holder, Your Honor. In that case, the petitioner was harmed physically three times. One time was a beating by a mob. He was also threatened by students at his school, as well as being detained for several days. And there, the court found that the harm did not rise to the level of persecution. OK, but here we have several beatings and we have several death threats over an extended time period. At least one by the police, right? At least one of the beatings by the police, jailed overnight. And some of the threats by the police, one or more of them. So ultimately, all the board says is, well, we don't know exactly what his medical problem was. He did say he went to the hospital. He did say his parents were shocked about how he looked. He said it took him several days to recover each time. Nobody asked him anything else. And neither the court, which does have some obligation to develop the record, nor the DHS lawyer asked him for any more details. And that's all the board relied on, right? The fact that he didn't have more medical evidence, essentially. No, Your Honor, the board didn't solely rely on that. The board relied on the lack of evidence about the harms that he experienced. Harm, meaning how badly he was hurt. Is that what you mean? Yes, Your Honor. But it wouldn't have had to be evidence. It's not a lack of corroboration, right? He didn't even testify to it. That's the difficulty, it seems to me. And I can't find a case like that. Correct, Your Honor. This is not a lack of corroboration case. But for a petitioner, this petitioner is relying solely on his testimony to meet his burden of proof. And the statute requires a petitioner in that situation to provide testimony that is not just credible and persuasive, but also refers to specific facts sufficient to show that he is a refugee. And here, it's not that he just did not testify about what medical treatment he receives or ever directly say that he was injured. It's that we don't know enough about the physical instances of harm to assess the severity of each of those incidents. I think you make a really strong point there. And believe me, my clerk and I have spent time this week looking for cases along those lines because I don't think he ever testified about the degree of harm from the beatings, right? And on duty, I looked and, you know, consider duty to develop the record by the IJ. I can't find a case where someone's represented and we rely on the IJ failing to ask the question. But you still have a death threat. And that seems to me to be your big problem. Could you address that directly, please? Yes, Your Honor. So death threats certainly can, on their own, rise to the level of persecution. But in those cases... The question's on their own.  So death threats with other harm certainly can rise to the level of persecution. But we need to know, were the threats credible? Well, wait a minute. We've got... You've got death threats. Just to be clear, I think you've got from the police, because I think you've got another argument if you want to talk about the hockey stick beatings by third parties. But from the police, right, you have jailed overnight, beaten for 45 minutes with wooden mallets, I think, or sticks or something, you know, right? I think he had to go to the hospital each time. But certainly after that incident, he did. And then you have death threats and testimony from the petitioner that even after he left the country, they'd come to his home looking for him, repeated the police, came to his home several times looking for him and repeated the death threats. I think that's the package you've got to deal with, right? And is your position that that doesn't rise to the level of harm, of level of persecution? I would like to push back a little on what you just said, Your Honor. All right. When you said that he needed to go to the hospital. That is not in the record. We don't know that. The only connection between the petitioner being beaten and seeking medical treatment is timing and chronology. Nowhere does the petitioner testify that he needed to go to the hospital. And that's why he went to the hospital, right? We've got that. Yes. He went to the hospital on three different occasions, Your Honor. And the. Well, let's go back to the death threats now, OK? Whether the death threats would or wouldn't make this life for the rise to the level of persecution, they are not discussed as part of the analysis in the BIA or IJ opinion. Is that correct? No, Your Honor. OK, where where are they? So on page four of the administrative record, which is the second page of the board's decision. So the paragraph at the top, Your Honor, the board specifically mentioned it. But then when they do the analysis in the next paragraph, they say that the problem is that he has not demonstrated the harm suffered, rose to a level of persecution. He offered no specific information regarding the impact of the beatings and assaults that he allegedly suffered. Accordingly, we have no basis to conclude that the respondent suffered persecution. So in that analysis, there is no discussion of the death threats or recognition of the death threats. The only problem is we don't know how badly he was hurt when he was beaten. I respectfully disagree, Your Honor. Assaults refers to threats as well as the warnings that the petitioner experienced. The Merriam Webster Dictionary defines assault as both a physical or a verbal attack. And here the petitioner experienced threats, experienced death threats. There is also another occasion in which he received like a warning. Believe the first incident where he was beaten by a group of boys. They warned him, you have to vote for our political party. You have to work for our political party. So that could also fall under as that may not be a threat, but that the type of verbal assault is a threat and assault. Verbal assault. Yes, Your Honor. Do you think the board was saying that it doesn't rise to the level here because we don't know how much harm he suffered from being threatened? And beaten, Your Honor. Well, that doesn't make sense. I struggle with it. First, I've never seen the board use assault in the criminal context in the way that you're suggesting. Death threats is sort of the term of art that we look for and see, you know, ubiquitously in these cases. So that's the first part. But if you could circle back to Judge Forrest's question. I guess I didn't ask a question. I mean, I was I was asking if you think that's what the board meant. Because as I read the part of the opinion that Judge Berzon was just talking about, about we don't have enough evidence here to know how much harm he suffered. I don't read that as alluding at all to threats. I read that only as alluding to his physical attacks. I read that as also alluding to the threats, Your Honor, because we don't. Could you slow down, please? I apologize. No, no, no. I am not. It didn't. I want to hear what your argument is. And it almost sounds like a non sequitur to me to say, right, that the board is engaging with by saying we don't know how much harm you've experienced by a death threat. What do you mean by that? So death threats can cause harm. In Mashri, the petitioner was not physically harmed, but the threats that she received caused actual suffering, caused the threats she received caused harm. So is your problem that you think the record doesn't show that this petitioner testified that the death threat was traumatic? My problem is that the petitioner does not testify about the impact of any of the threats, about whether he took the threat seriously. Did he think the people who were threatening him meant it? He fled his country. And he told the immigration authorities when he got here, he fled because he was afraid of being attacked and he'd been threatened. He testified that he left the country after his father told him that he felt he was unsafe and needed to leave the country, Your Honor. And why does that matter exactly? It's an element of persecution. Whether you yourself felt how you felt about it? It's not that it's an element, Your Honor. It speaks, it's evidence and speaks to how the petitioner was affected by what happened to him in his country. Did he think that he was in fear of his life? You just said it's not about how he felt, but it is about how he felt. It's not that he's, it's not that he needs to say magic words. It's not that he's required to say the threats were traumatic. It's that evidence like that, we need some evidence that these threats were credible. And that what, I'm sorry? These threats were credible, that the petitioner took the threat seriously. And he did leave his country. Well, he went into hiding and then he left. Well, Your Honor, he went into hiding after the police tried to arrest him and he escaped from that. So that, so at the time he went into hiding, he had only received one threat in person. And that was at the hands of some boys who attacked him from the bottle. That's an interesting sort of set of facts, because as I understand it, after he flees from the police trying to arrest him and goes to, I think it's grandmother or some relative's house somewhere else. Then very shortly after that, the police go to his home where he was living with his parents, I think, and said, if we catch him, we won't let him go and he'll be dead. So with all of that sort of happening contemporaneously, the argument that we don't know if these death threats were actually credible. Or that they, you know, that they mean anything, right? I guess I'm struggling with that as well. These aren't just like random people on the street, like we want to kill you, right? These are the police who tried to arrest him. And a couple of days later, comments tell his parents, we catch him, he's dead. I see I'm out of time. If I could just briefly respond to Your Honor. In Flores Molina, this court relied into determining that the threats the petitioner received were credible from the government, as well as from government, from government affiliates. Excuse me, was based on the background evidence. What else was happening in Nicaragua at that time? The government and its affiliates have campaigned of violence against the opposition. We don't have that here. Ordinarily, as I understand it, when there is actual violence as well, that is sufficient with the death threats to give some credibility to the death threats, i.e. people actually were physically attacking him. So the kinds of cases you're talking about are the pure threat cases. But if we're dealing with threats plus violence, the case law seems quite uniformly to say that that rises or can rise to the level of persecution, giving giving the death threats credibility because of the violence. That's accompanying violence. Well, Your Honor, there is a lapse in time of about a year between when the police physically harmed him and between the death threats. And I don't think that they threatened him at the end of the meeting. I believe they warned him that he needed to vote for the battle party. I do not believe the immigration judge found that the police threatened him at that time. But I may have missed that. And if so, I apologize, Your Honor. I think the threat may have come when they visited his home. Certainly, I don't think on each occasion they visited his home, but we can check on that other point. You're over your time. Would you like to wrap up? Yes, Your Honor. To briefly conclude, the court to deny the petition for review. The evidence is insufficient to compel the collusion that the harm the petitioner experienced rose to the level of persecution. Petitioner has also waived challenging the board's determinations that he did not establish a well-founded fear of future persecution or eligibility for withholding of removal or protection under the Convention Against Torture. Thank you all for your time. Thank you for your argument. We'll hear from opposing counsel briefly. Thank you, Your Honors. To opposing counsel's point, I'm not aware of any case law from this court that requires the respondent or the petitioner to specifically discuss the mental trauma that they suffered as a result of receiving death threats. As Judge Berzon noted, the case law seems to require sufficiently serious death threats when they're combined with close confrontations. That has always met the standard for past persecution. In this case, if it was just the death threats that we were evaluating, the court has typically looked to whether the people meeting out threats have the capacity to follow through on them. I don't think there's any question that the police have the capacity to kill somebody and receive impunity for it. They are governmental officers. They're the ones who are in charge of prosecuting individuals who commit murders. So it's pretty unusual to say that they would not have impunity for that crime or the ability to carry it out. That's particularly true in this case where they had already arrested the petitioner, had already beaten him for 45 minutes and held him overnight. They had already engaged in corrupt acts where they demanded a bribe from his family to release him. All of these indicate that they understand that they have impunity with respect to what they do to the respondent. I would also say that that pushes us into the de novo category of review because what the government is claiming in this case is that when somebody receives death threats, they also need to testify about how those death threats impacted them. If we needed evidence of how serious the petitioner took the death threats, we just need to look to his actions. He went into hiding in his grandparents' house. After he received the death threats from the police via his parents, he fled the country because his parents told him how serious the situation had become. This was attacks that spanned over the course of, I believe it's a two-year period of time from October 2011 until August 2013. That prolonged period of attacks combined with death threats is sufficiently serious. As such, we urge this court to grant the petition for review and remand the case with clear instructions that the harm the petitioner suffered was sufficiently serious to rise to the level of past persecution. Thank you. Thank you both for your arguments. We'll take that case under advisement. We're going to stand in recess for about 10 minutes and then we'll be back.
judges: BERZON, CHRISTEN, FORREST